UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

─────────────────────────────────

LAWRENCE J. WALTER,

                            Petitioner,                 9:06-CV-0128
                                                        (GHL)

            v.

SUPERINTENDENT,

                            Respondent.

─────────────────────────────────

APPEARANCES:                          OF COUNSEL:

LAWRENCE J. WALTER, 01-B-2188
Petitioner *pro se*
Oneida Correctional Facility
P.O. Box 4580
Rome, New York 13442


HON. ANDREW M. CUOMO                  MALANCHA CHANDA, ESQ.
Office of the Attorney General        Assistant Attorney General
State of New York
Counsel for Respondent
120 Broadway
New York, New York 10271


GEORGE H. LOWE, United States Magistrate Judge

**MEMORANDUM DECISION AND ORDER**[1]

## I.    THE HABEAS PETITION

On January 31, 2006, Petitioner Lawrence J. Walter, *pro se*, filed a petition under 28

U.S.C. § 2254 for a writ of *habeas corpus*.  He challenges the judgment entered on September

─────────────────

[1]     This matter is before the Court by consent of both parties.  (Dkt. No. 13.)

25, 2001, in Oneida County Court convicting him, upon his plea of guilty, of one count of

sodomy in the first degree (N.Y. Penal Law § 130.50(4)), and sentencing him to a determinate

sentence of 12 years of imprisonment followed by five years of post-release supervision.  (Dkt.

No. 1.)  Petitioner's conviction was affirmed by the Appellate Division, Fourth Department, and

leave to appeal to the Court of Appeals was denied.  *People v. Walter*, 773 N.Y.S.2d 677 (N.Y.

App. Div. 2004); *reargument denied* 778 N.Y.S.2d 737 (Jun. 14, 2004); *leave denied* 3 N.Y.3d

650 (2004); *on reconsideration* 3 N.Y.3d 712 (2004); *cert. denied Walter v. New York*, 543 U.S.

1165 (2005).

## II.   THE CLAIMS

Petitioner seeks *habeas* relief on the following grounds[2]:

1.   The indictment, in particular the count to which Petitioner pleaded guilty, was

defective.  (Dkt. No. 1-2 at 10-11, 35, 37-40, 42, 44-45, 47-48.)

2.   Petitioner's guilty plea was involuntary and unlawfully induced.  (Dkt. No. 1 at 5;

Dkt. No. 1-2 at 31-32, 33-34, 40.)

3.   Petitioner's conviction was based on evidence obtained through an unlawful

---

[2]   The petition itself lists four grounds: (1) whether the plea was voluntary; (2) whether
the conviction was obtained by an unlawful search and seizure; (3)  whether the conviction was
obtained by an unlawful arrest; and (4) ineffective assistance of counsel.  (Dkt. No. 1 at 5-6.)  The
petition also refers to "other grounds stated and supported in the attached affidavit of supporting
facts."  (Dkt. No 1 at 6.)  The affidavit of supporting facts is 50 pages long.  (Dkt. No. 1-2.)  The
affidavit does not clearly indicate what grounds are being "stated and supported."  Petitioner's
Memorandum of Law (Dkt. No. 6), which is 51 pages long, also purports to set out grounds for the
petition.  Respondent has addressed only four of the grounds listed in the petition, the affidavit of
supporting facts, and the memorandum of law: (1) whether the plea was voluntary; (2) whether the
search, seizure, and arrest violated the Fourth Amendment; (3) whether the indictment was defective
due to an amendment to Penal Law § 130.50; and (4) ineffective assistance of counsel.  (Dkt. No.
8.)  The Court has done its utmost to discern and address each ground raised by Petitioner's moving
papers.

2

search and seizure.  (Dkt. No. 1 at 5; Dkt. No. 1-2 at 13-15.)

4.      Petitioner's arrest was unlawful.  (Dkt. No. 1 at 5; Dkt. No. 1-2 at 15-16, 17-18.)

5.      The felony complaint was based on unreliable evidence.  (Dkt. No. 1-2 at 18, 22, 34-35.)

6.      Petitioner's preliminary hearing was cancelled without good cause, violating his right to due process.  (Dkt. No. 1-2 at 2.)

7.      The trial court did not conduct a proper probable cause hearing or bail inquiry. (Dkt. No. 1-2 at 19-20.)

8.      The evidence presented to the grand jury was false and inflammatory.  (Dkt. No. 1-2 at 14, 17, 24-28, 32-33, 35.)

9.      Petitioner was denied effective assistance of trial counsel.  (Dkt. No. 1 at 6; Dkt. No. 1-2 at 36-37, 41-42, 43-44, 47-48, 49-50.)

10.      The state appellate court illegally shifted the burden of proof to Petitioner to prove the date on which the crime occurred.  (Dkt. No. 1-2 at 39, 46-47.)

## III.    THE RELEVANT FACTUAL BACKGROUND

### A.    The New York Sodomy Statute, the Charges and the Guilty Plea

In New York prior to February 1, 2001, sodomy in the first degree was defined as deviate sexual intercourse with a person "who is less than eleven years old."  N.Y. Penal Law § 130.50 (McKinney 2000).  After February 1, 2001, sodomy in the first degree was defined, in part, as deviate sexual intercourse between a person who is "eighteen years old or more" and a person

"who is less than thirteen years old[3]."  N.Y. Penal Law § 130.50 (McKinney 2001).  This amendment increased the penalty for sodomy involving 11 and 12 year old victims by reclassifying the crime from a second degree, Class D violent felony, to a first degree, Class B violent felony.  Under New York law, Class D violent felonies carry a maximum sentence of seven years, while Class B violent felonies carry a maximum sentence of 25 years.  N.Y. Penal Law § 70.02(3) (McKinney 2000).

On July 3, 2001, the Oneida County Grand Jury issued a 35-count indictment against Petitioner and two other men.  Counts 27-35 of the indictment alleged that "on or about the winter/spring of 2001," Petitioner engaged in various sexual acts with four different children, ages 10-15.  Counts 27, 28 and 32 alleged that Petitioner committed sodomy in the first degree with two different victims, ages 12 and 10.  Count 27, specifically, alleged that Petitioner committed first degree sodomy "on or about the winter/spring of 2001" by engaging "in deviate sexual intercourse with another person who is less than thirteen years old, to wit: a male born on September 9, 1988."  (Ex. L at D-1.)  In a second indictment, Petitioner was charged with 15 counts of possessing a sexual performance by a child (Penal Law § 263.16).

Petitioner appeared in Oneida County Court on August 14, 2001.  The judge placed on the record a plea offer under which Petitioner would plead guilty to Count 27 of the first indictment, sodomy in the first degree involving a 12-year-old victim, in exchange for a determinate sentence of 12 years of imprisonment followed by five years of post-release supervision, with a mandatory surcharge and crime victim assistance fee.  (Transcript of Plea

---

[3]      The statute was amended again to re-title the offense "criminal sexual act in the first degree" and to specify that the prohibited conduct is "oral sexual conduct" and "anal sexual conduct."  This amendment was effective November 1, 2003, and is thus irrelevant here.

Hearing ("PH") at 4:13-23.)  Petitioner asked the judge to explain the mandatory surcharge,

which the judge did.  (PH. at 5:6-20.)  The judge then began the plea colloquy:

| | |
|---|---|
| THE COURT: | I've told you what the sentence is going to be.  Has anyone else promised you anything in order to get you to plead guilty? |
| PETITIONER: | No, sir. |
| THE COURT: | Did anyone threaten you in any way in order to get you to plead guilty? |
| PETITIONER: | Well, not really threatened me, no, sir, just told me this is what I have, I have no other option. |
| THE COURT: | Okay.  So you haven't been threatened.  I'm sure what they've told you is here's your exposure if you are convicted. |
| PETITIONER: | Right. |
| THE COURT: | And, obviously, the exposure, the top counts of the initial indictment are class B felonies, there's a 25-year exposure on each one of those.  I'm sure that's been explained to you, right? |
| PETITIONER: | Yes. |
| THE COURT: | On these new charges ... fifteen counts, they're all class E felonies, and there's a four-year exposure on each one of those, and all of them can be consecutive, which means back to back.  You understand all that? |
| PETITIONER: | Yes. |
| THE COURT: | That has been explained to you? |

5

PETITIONER:      Yes.

THE COURT:      Is that what you mean by --

PETITIONER:      Well, yes, that's what I mean by forced.  No one's threatened me or done anything of that nature.

THE COURT:      So [defense counsel] has just said here's your exposure, here's what the offer is?

PETITIONER:      Yes.

THE COURT:      And given you his best advice?

PETITIONER:      Yes.

(PH. at 7:22-9:8.)  The court advised Petitioner that by pleading guilty he would waive his right to a jury trial, to confront the witnesses against him, to present evidence, and to appeal his conviction.  (PH. at 9:12-10:15, 10:24-11:22.)  Petitioner stated that he understood that he would be waiving those rights.  (PH. at 10:21-23, 11:22-24.)

The court then asked Petitioner about the details of the crime:

THE COURT:      It's alleged that in the winter or spring of this year, 2001, in the City of Utica, you were more than 18 years of age; that's true, is it not?

PETITIONER:      Yes, sir.

THE COURT:      And it's alleged you engaged in deviate sexual intercourse with [the victim], who at the time was under the age of 13; in fact, was 12 years old ... Do you admit you know [the victim], knew him at the time?

6

PETITIONER:          Yes.

THE COURT:           And it's alleged you had contact between your mouth and his

                     penis; do you admit that's true?

PETITIONER:          Yes, sir.

THE COURT:           Where did this take place?

PETITIONER:          On Erie Street.

THE COURT:           Is this Mr. Brown[4]'s place?

PETITIONER:          Yes.

THE COURT:           All right.  And this occurred during the winter/spring of this year?

PETITIONER:          Yes, sir.

THE COURT:           Okay.  On Erie Street in the City of Utica?

PETITIONER:          Yes.

THE COURT:           [The victim], your mouth in contact with his penis, is that true?

PETITIONER:          Yes, sir ...

THE COURT:           Mr. Walter, how do you plead then to the 27th count of this

                     indictment, which is sodomy in the first degree, guilty or not

                     guilty?

PETITIONER:          Guilty.

(PH. at 13:1-14:10.)  The court accepted Petitioner's plea.  (PH. at 14:24.)

On September 25, 2001, Petitioner was sentenced in accordance with his plea bargain to a

---

[4]      Robert A.  Brown was one of Petitioner's co-defendants, charged in Counts 1-22 of the first indictment.  He pleaded guilty and was sentenced to a determinate sentence of 25 years of imprisonment, to be followed by five years of post-release supervision.  (Dkt. No. 11 at 9.)

determinate term of 12 years of imprisonment, to befollowed by five years of post-release supervision.

B.    Petitioner's Direct Appeal

Petitioner did not file a timely direct appeal.  However, on September 30, 2002, Petitioner received permission to file a late appeal.  (Ex. L at D-5.)  On appeal, Petitioner argued through counsel that the indictment was not jurisdictionally sound, and thus his plea was not voluntary and intelligent, because he pleaded guilty to conduct that occurred "during the winter/spring" of 2001[5].  (Ex. E[6].)  Petitioner, acting *pro se*, also filed a supplemental brief arguing that trial counsel was ineffective and that his sentence violated the Ex Post Facto Clause of the United States Constitution and the New York Constitution.  (Ex. F.)

On March 19, 2004, the Fourth Department affirmed Petitioner's conviction.  *People v. Walter*, 773 N.Y.S.2d 677 (N.Y. App. Div. 2004).  The appellate court stated:

> By pleading guilty, [Petitioner] waived his contention that the time frame set forth in that count of the indictment is "excessive," thus rendering it jurisdictionally defective.  Similarly, any issue concerning the proper interpretation or application of the statute was forfeited by the guilty plea.  We also reject [Petitioner's] related contention that the indictment violates the Ex Post Facto Clause of the United States Constitution.  That clause "prohibits states from enacting laws that criminalize prior, then-innocent conduct; increase the punishments for past offenses; or eliminate defenses to charges for incidents that precede the enactment."  Prior to February 1, 2001, one of the material elements of sodomy in the first degree was that the

---

[5]    As explained above, prior to February 1, 2001, the conduct of which Petitioner was convicted would have qualified as a Class D violent felony rather than as a Class B violent felony because the victim was 12 years old.

[6]    The Court was not provided with a copy of the appellate brief.  The Court's summary of Petitioner's arguments is based on the Brief for the Respondent filed by the District Attorney in the Fourth Department.

> victim be "less than eleven years old."  As of February 1, 2001, the
> victim's age element was changed to "less than thirteen years old."
> Because the victim here was 12 years old, and the time frame set forth
> in the indictment encompasses periods prior to February 1, 2001,
> [Petitioner] contends that his prosecution violates the Ex Post Facto
> Clause by increasing his criminal culpability.  However, [Petitioner]
> has not established that the alleged criminal act was committed prior
> to the change in the statute. [Petitioner] had the ability to demand a
> bill of particulars to specify the date of the criminal activity, but he
> failed to do so.  We therefore reject [Petitioner's] contention.  We
> further conclude that the plea was knowingly, voluntarily and
> intelligently entered, and that the bargained-for sentence is neither
> illegal nor unduly harsh or severe.

*Walter*, 773 N.Y.S.2d at 677-78.

Petitioner, *pro se,* requested reargument.  (Ex. I.)  His request was denied.  *People v.*

*Walter*, 778 N.Y.S.2d 737 (Jun. 14, 2004).

Petitioner, through counsel, moved for leave to appeal to the New York Court of Appeals.

Petitioner requested review of three issues: (1) whether the indictment violated the Ex Post Facto

Clause of the United States Constitution; (2) whether the Fourth Department unconstitutionally

shifted the burden to Petitioner to prove that the crimes were committed prior to the change in

the Penal Law; and (3) whether trial counsel was ineffective.  (Ex. G.)  Petitioner also filed a *pro*

*se* supplemental brief in support of the motion for leave to appeal.  (Ex. H.)

The Court of Appeals denied leave to appeal.  *People v. Walter*, 3 N.Y.3d 650 (2004).

Petitioner, *pro se*, requested reconsideration.  (Ex. J.)  The motion was denied.  *People v. Walter*,

3 N.Y.3d 712 (2004).

Petitioner, *pro se*, filed a petition for writ of certiorari in the United States Supreme

Court.  (Ex. K.)  The petition was denied on February 22, 2005.  *Walter v. New York*, 543 U.S.

1165 (2005).

C.     Petitioner's First CPL 440 Motion

While his direct appeal was pending, Petitioner, acting *pro se*, filed a New York Criminal

Procedure Law section 440 motion ("CPL 440 motion") in Oneida County Court.  He argued that

his conviction should be vacated because (1) due to the February 1, 2001, amendment to Penal

Law § 130.50(4), "the indictment was jurisdictionally flawed in that it did not set forth sufficient

[facts] to establish that subdivision 4 of Penal Law 130.50 was present on the date of the

allegations;" (2) trial counsel was ineffective for not raising the issue; and (3) the trial court's

failure to raise the issue *sua sponte* violated Petitioner's right to due process.  (Ex. A.)

On September 2, 2003, Oneida County Court denied Petitioner's *pro se* CPL 440 motion

on the basis that the issues could be raised in Petitioner's direct appeal, which was then pending.

Addressing the merits briefly, the court found that trial counsel "provided [Petitioner] at all

stages of the proceedings with wise and competent counsel" that was "more than meaningful."

The court did not directly address Petitioner's argument about the February 1, 2001, amendment

to Penal Law § 130.50.  (Ex. C.)

Petitioner, acting *pro se*, moved for leave to appeal the denial of his CPL 440 motion.

(Ex. D.)   On October 28, 2003, the Fourth Department denied the application. (Ex. L at D-9.)

D.     Petitioner's Second CPL 440 Motion

Petitioner, *pro se*, filed a second CPL 440 motion after exhausting his direct appeal.

Petitioner argued that his guilty plea was not voluntary, that the trial court did not perform a

proper inquiry into whether Petitioner's plea was voluntary, and that the evidence against him

was obtained through an illegal search and seizure.  (Exs. M and N.)  Oneida County Court

denied the motion on May 22, 2006.  The court found that Petitioner's claim regarding the

voluntariness of his plea was barred by New York Criminal Procedure Law section 440.10(2)(a) because it had been "previously determined on the merits upon an appeal from the judgment." The court found that Petitioner's other claims were barred pursuant to New York Criminal Procedure Law section 440.10(2)(c) because Petitioner had "unjustifiabl[y] fail[ed] to raise such ground[s] ... upon appeal."   (Ex. M.)

Petitioner applied for leave to appeal.  The Fourth Department denied the application on August 25, 2006.  (Dkt. No. 11 at 1.)

E.      The *Habeas* Petition

Petitioner filed his petition for writ of *habeas corpus* in this Court on January 31, 2006. (Dkt. No. 1.)  He filed a memorandum of law in support of the petition on April 18, 2006.  (Dkt. No. 6.)  Respondent filed opposition papers on July 21, 2006.  (Dkt. Nos. 8-9.)  Petitioner filed a traverse on August 3, 2006.  (Dkt. No. 10.)  On September 8, 2006, Petitioner filed a supplemental letter brief.  (Dkt. No. 11.)

IV.    **DISCUSSION**

A.      Standard of Review

When reviewing a habeas petition, a federal court is limited to deciding whether a conviction violated the Constitution, laws or treaties of the United States.  28 U.S.C. § 2241(c) (2006).  Relief does not lie for errors of state law.  *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *DiGuglielmo v. Smith*, 366 F.3d 130, 136-137 (2d Cir. 2004).   Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may not grant *habeas* relief to a state prisoner on a claim that was adjudicated on the merits in state court proceedings unless the state court's decision was "contrary to, or involved an unreasonable application of, clearly

11

established federal law, as determined by the Supreme Court."  28 U.S.C. § 2254(d)(1) (2006);

*Carey v. Musladin*, 127 S. Ct. 649, 653 (2006); *Campbell v. Burgess*, 367 F. Supp. 2d 376, 380

(W.D.N.Y. 2004).

A decision is adjudicated "on the merits" when it finally resolves the claim, with res

judicata effect, based on substantive rather than procedural grounds. *Sellan v. Kuhlman*, 261 F.3d

303, 311-12 (2d Cir.2001). This is so "even if the state court does not explicitly refer to either the

federal claim or to relevant federal case law." *Id*. at 312.  To determine whether a state court has

adjudicated a claim "on the merits," a federal *habeas* court must examine three "clues" to classify

the state court decision as either (1) resting primarily on federal law or interwoven with federal

law; or (2) resting primarily on state procedural law[7].  *Jimenez v. Walker*, 458 F.3d 130, 145 (2d

Cir. 2006).  "Absent a clear and express statement of reliance on a state procedural bar,"

decisions in the first category are deemed to have been made "on the merits" of the federal claim.

*Id.*

A decision "on the merits" is "contrary to ... clearly established federal law" when it is

"either contrary to Supreme Court precedent on a question of law or ... opposite to a relevant

Supreme Court case with 'materially indistinguishable' facts."  *Johnson v. West*, No. 9:04-cv-

751, 2007 WL 952058 at *2 (N.D.N.Y. Mar. 29, 2007), *quoting Williams v. Taylor*, 529 U.S.

362, 405-406 (2000).  A state court 'unreasonably applies' federal law when the state court

correctly identifies the governing legal rule in a particular case but applies the rule to the facts in

an "objectively unreasonable" manner. *Johnson v. West*, 2007 WL 952058 at *2 (*quoting*

---

[7]     The three "clues" to the basis of a state court's decision are (1) the face of the state-court opinion; (2) whether the state court was aware of a procedural bar; and (3) the practice of state courts in similar circumstances.  *Jimenez*, 458 F.3d  at 145, n. 16.

*Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)).  Although "[s]ome increment of incorrectness

beyond error is required" in order to grant a federal habeas application, that increment "need not

be great; otherwise, habeas relief would be limited to state court decisions 'so far off the mark as

to suggest judicial incompetence.'" *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000); *see*

*also Hawkins v. Costello*, 460 F.3d 238, 243 (2d Cir. 2006).  The state court's determination of a

factual issue is presumed to be correct, and the petitioner has the burden of rebutting that

presumption by clear and convincing evidence.  28 U.S.C. § 2254 (e)(1) (2006); *DeBerry v.*

*Portuondo*, 403 F.3d 57, 66 (2d Cir. 2005), *cert. denied* 546 U.S. 884 (2005); *Boyette v. Lefevre*,

246 F.3d 76, 88 (2d Cir. 2001).

    B.    Indictment

    Petitioner argues that the indictment charging him with sodomy in the first degree was

defective because it alleged that Petitioner committed the crime "on or about the winter/spring of

2001."  (Dkt. No. 1-2 at 10-11, 35, 37-40, 42, 44-45, 47-48.)

    On direct appeal, the Fourth Department found that "[b]y pleading guilty, [Petitioner]

waived his contention that the time frame set forth in ... the indictment is 'excessive,' thus

rendering it jurisdictionally defective."  *Walter*, 773 N.Y.S.2d at 677.  This was a reasonable

application of clearly established federal law.

    "After entering a guilty plea, a criminal defendant may not 'thereafter raise independent

claims relating to the deprivation of constitutional rights that occurred prior to the entry of the

guilty plea. He may only attack the voluntary and intelligent character of the guilty plea.' ″

*Bastien v. William*, No. 03 Civ. 5749 (DLC), 2004 WL 2978283, at *5 (S.D.N.Y.  Dec. 20, 2004)

(quoting *Tollett v. Henderson*, 411 U .S. 258, 267 (1973)).  Guilty pleas, if voluntary, "preclude a

defendant from asserting independent claims relating to prior, nonjurisdictional events." *Conyers v. McLaughlin*, No. 96 CV 1743 NAM GLS, 2000 WL 33767755, at *4 (N.D.N.Y.  Jan. 27, 2000).  As discussed below, Petitioner's guilty plea was voluntary.  He is therefore precluded from asserting his claim regarding the indictment.

Even if one classifies Petitioner's argument as relating to a "jurisdictional event," the claim is not cognizable.  Challenges to the sufficiency of a state indictment are not generally cognizable on *habeas* review.  *See United States ex rel. Mintzer v. Dros*, 403 F.2d 42, 43 (2d Cir. 1967); *Marcus v. Conway*, 2007 WL 1974305, at *4 (S.D.N.Y.  July 5, 2007); *Roberts v. Scully*, 875 F. Supp. 182, 194 (S.D.N.Y.), *aff'd,* 71 F.3d 406 (1995). A defect in a state indictment can form the basis for federal *habeas* relief only if the indictment falls below basic constitutional standards. *See Beverly v. Walker*, 899 F. Supp. 900, 909 (N.D.N.Y.1995) (citing *Carroll v. Hoke*, 695 F. Supp. 1435, 1438 (E.D.N.Y.), *aff'd,* 880 F.2d 1318 (2d Cir.1989)).  An indictment passes constitutional muster if "it charges a crime [1] with sufficient precision to inform the defendant of the charges he must meet and [2] with enough detail that he may plead double jeopardy in a future prosecution based on the same set of events." *DeVonish v. Keane*, 19 F.3d 107, 108 (2d Cir.1994) (internal quotation marks and citation omitted); *see also Beverly v. Walker*, 899 F. Supp. at 909 (quoting *DeVonish*); *Carroll v. Hoke*, 695 F. Supp. at 1438 (noting that an indictment is constitutionally sufficient if it informs "the accused, in general terms, of the time, place and essential elements of the alleged crime") (citations omitted).

Here, the indictment did not fall below basic constitutional standards.  It was sufficiently detailed, informing Petitioner of the crimes with which he was charged (including the section and subsection number), the acts that constituted the alleged crimes, the gender and birth date of the

alleged victims, and the general timeframe in which the alleged crimes occurred.  Count 27 was

phrased in the terms of the version of Penal Law section 130.50(4) in effect on or after February

1, 2001, because it alleged that Petitioner was "eighteen years old or more" and that the victim

was "less than thirteen years old."  This was sufficient to resolve any confusion about which

version of the statute Petitioner was charged with violating.  Thus, the indictment did not fall

below constitutional standards and Petitioner is not entitled to *habeas* relief on this ground.

     C.    <u>Involuntary plea</u>

Petitioner argues that his "[c]onviction was obtained by a plea of guilty which was

unlawfully induced and not made voluntarily with understanding of the nature of the charge and

the consequence."  (Dkt. No. 1 at 5.)  Petitioner alleges that the trial court, the prosecutor, and

defense counsel conspired "to illegally, maliciously, and wrongfully pressure, coerce, intimidate,

force, deceive, trick, defraud, persuade, induce, and otherwise convince me by any means

possible, including the use of duress, coercion, threats, misrepresentation, lies, trickery, fraud" to

accept the plea offer.  (Dkt. No. 1-2 at 4.)  In furtherance of this conspiracy, Petitioner alleges,

defense counsel told Petitioner that it was in his best interest to accept the plea offer because the

prescribed statutory maximum sentence would be in excess of 100 years, the State had a very

strong case against Petitioner including the testimony of the minor victims and Petitioner's co-

defendants, and juries are sympathetic to minor victims who allege sexual abuse.  (Dkt. No. 1-2

at 7-8.)  Petitioner alleges that the alleged conspirators were motivated by the desire to protect

the privacy of the minor victims, rob Petitioner of his constitutional rights, and cover up the fact

that the charges were "phony, trumped-up, manufactured and concocted."  (Dkt. No. 1-2 at 5-6.)

      Petitioner also argues that the prosecution's failure to respond to a Demand for Discovery

15

impacted the quality of his plea.  Specifically, he argues that  "without knowing what documents existed, my plea of guilty could not have been made knowingly, voluntarily and intelligently." (Dkt. No. 1-2 at 21.)

The Fourth Department determined this federal claim on its merits on direct appeal, finding that Petitioner's guilty "plea was knowingly, voluntarily and intelligently entered." *Walter*, 773 N.Y.S.2d at 678.  That determination was a reasonable application of clearly established federal law.

"The longstanding test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'"  *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (*quoting North Carolina v. Alford*, 400 U.S. 25, 31 (1970)); *see also Parke v. Raley*, 506 U.S. 20, 28-29 (1992) (plea is valid when it is both knowingly and voluntarily made); *Boykin v. Alabama*, 395 U.S. 238, 242-43 (1969) (United States Constitution requires that guilty plea be intelligently and voluntarily entered).  A knowing plea is entered "'with understanding of the nature of the charge and the consequences of the plea.'"  *Santobello v. New York*, 404 U.S. 257, 261 n. 1(1971) (quoting Fed. R. Crim. P. 11); *see Martinez v. Costello*, No. 03 CIV 2763, 2004 WL 26306, at *5 (S.D.N .Y. Jan. 5, 2004) (*citing Santobello* and Rule 11); *see also Hanson v. Phillips*, 442 F.3d 789, 798 (2d Cir.2006).

To establish that a criminal defendant's guilty plea was knowingly, intelligently and voluntarily entered the court must find, based upon the record of the relevant plea proceedings, that the defendant (1) was competent to proceed; (2) was fully aware of the nature of the charges faced; (3) had a rational and factual understanding of the proceedings; and (4) was cognizant of the constitutional protections relinquished upon entry of the plea.  *Oyague v. Artuz*, 393 F.3d 99,

16

106 (2d Cir.2004); *Matusiak v. Kelly*, 786 F.2d 536, 543 (2d Cir.1986), *cert. dismissed* 479 U.S. 805 (1986).

Petitioner argues that  he did not understand the nature of the charge and the consequences of the plea because neither defense counsel nor the judge informed him about the amendment to Penal Law section 130.50.  (Dkt. No. 1-2 at 42-43, 48-49.)  As discussed above, the indictment sufficiently described the nature of the charges against Petitioner.  In addition, the judge read each element of Count 27 to Petitioner during the plea colloquy.  Therefore, Petitioner was advised of the nature of the charge.

Petitioner argues that the colloquy did not inform him of the consequences of his plea because:

> I was never informed that a plea of guilty would waive my right to have the law interpreted and fairly applied to me, that I was waiving more than my right to appeal, I was waiving my right to challenge the legality, the admissibility and sufficiency of the evidence against me; to receive a fair and impartial trial; to confront and cross-examine my accusers and the witnesses against me; not to be deprived of my life, liberty or property without first receiving due process of law.  These and all the other things that I was giving up when I plead guilty were never explained to me as required by law and therefore my plea of guilty was not made knowingly, voluntarily and intelligently.

(Dkt. No. 1-2 at 31-32.)  The transcript of the plea hearing shows that the judge did, in fact, inform Petitioner of the consequences of pleading guilty.  (PH. at 9:12-11:22.)

Petitioner argues that he was coerced into pleading guilty.  Petitioner's plea was voluntary as defined by clearly established federal law.  The trial court correctly found that defense counsel's statements to Petitioner that he faced a possible 100-year sentence if convicted of all of the charges against him did not constitute a threat or coercion.   It is not coercion if a defendant

17

pleads guilty to avoid a harsher sentence.  *Brady v. United States*, 397 U.S. 742, 752-53 (1970).

"While confronting a defendant with the risk of more severe punishment clearly may have a

'discouraging effect on the defendant's assertion of his trial rights, the imposition of these

difficult choices [is] an inevitable'-and permissible-'attribute of any legitimate system which

tolerates and encourages the negotiation of pleas.' "  *Bordenkircher v. Hayes*, 434 U.S. 357,

364(1978) (*quoting Chaffin v. Stynchcombe*, 412 U.S. 17, 31 (1973)); *see also Gomez v. Duncan*,

No. 02-CV-0846, 2004 WL 119360, at *20 (S.D.N.Y. Jan. 27, 2004) (holding that the court's

statements to the petitioner that, essentially, "if he sentenced [the petitioner's] co-defendant Pena

to two consecutive terms of 15 years to life for the attempted murder counts, he intended to give

[the petitioner] the same if he was convicted after trial" was not coercive); *Oyague v. Artuz*, 274

F. Supp. 2d 251, 258 (E.D.N.Y.2003) (holding that a guilty plea was not coerced where the

petitioner claimed that the trial court told him that if he was convicted after trial "he would spend

the rest of his life in prison because he would be facing a likely 65 years to life sentence.

Assuming the conversation took place, there is no allegation that the trial court did not believe

that its statements were accurate or that the court was motivated by anything but a desire to fully

inform petitioner of the consequences of going to trial.")

Therefore, Petitioner is not entitled to *habeas* relief on this ground.

      D.   <u>Fourth Amendment</u>

     Petitioner argues that his "[c]onviction was obtained by use of an unconstitutional search

and seizure."  (Dkt. No. 1 at 5.)  Petitioner did not raise this argument in his first appeal or in his

first CPL 440 motion.  When he raised it in his second CPL 440 motion, the court rejected it

pursuant to New York Criminal Procedure Law § 440.10(2)(c) because Petitioner had

"unjustifiabl[y] fail[ed] to raise such ground[s] ... upon appeal."  (Ex. M.)

Generally, a federal court may not reach the merits of a petitioner's *habeas* claim if the state courts' rejection of the petitioner's federal claim rested "on a state law ground that is independent of the federal question and adequate to support the judgment[8]."  *Coleman v. Thompson*, 501 U.S. 722, 729 (1991).  "To determine whether a state procedural bar is adequate to support the judgment, a federal habeas court should look to whether the state rule at issue is firmly established and regularly followed."  *Clark v. Perez*, 510 F.3d 382, 391 (2d Cir. 2008). New York Criminal Procedure Law section 440.10(2)(c), which bars collateral proceedings when a criminal defendant has failed to raise the grounds on direct appeal, is an independent and adequate state law ground.  *Ellison v. Keane*, 201 F.3d 431 (2d Cir. 1999); *Saxon v. Ercole*, No. 06 Civ. 7728, 2008 WL 3446488, at * 24 (S.D.N.Y. Aug. 12, 2008).  Thus, Petitioner may only seek *habeas* review if he shows "cause for the default and prejudice resulting therefrom."  *Levine v. Commissioner of Correctional Services*, 44 F.3d 121, 126 (2d Cir. 1995).

To establish "cause" for a procedural default,  a petitioner must show that some objective external factor impeded his or her ability to either comply with the relevant procedural rule or fully exhaust his federal claims.  *See Coleman v. Thompson*, 501 U.S. 722, 753 (1991); *Restrepo v. Kelly*, 178 F.3d 634, 638 (2d Cir. 1999); *Doleo v. Reynolds*, Civ. No. 00-7927, 2002 WL 922260, at *3 (S.D.N.Y. May 7, 2002).  Examples of external factors include interference by officials, ineffective assistance of counsel, or that "the factual or legal basis for a claim was not

---

[8]     Respondent, despite noting the Oneida County Court's reason for rejecting Petitioner's Fourth Amendment claim (Dkt. No. 8 at 9-10), did not argue that Petitioner's Fourth Amendment claim is noncognizable on *habeas* review due to an independent and adequate state procedural bar.

reasonably available" at trial or on direct appeal. *Murray v. Carrier*, 477 U.S. 478, 488 (1986)

(citing *Reed v. Ross*, 468 U.S. 1, 16 (1984) and quoting *Brown v. Allen*, 344 U.S. 443, 486

(1953)). *See also Bossett v. Walker*, 41 F.3d 825, 829 (2d Cir. 1994)(citing *Murray*, 477 U.S. at

488); *United States v. Helmsley*, 985 F.2d 1202, 1206 (2d Cir. 1992); *Lovacco v. Stinson*, Civ.

No. 97-5307, 2004 WL 1373167, at *3 (E.D.N.Y. June 11, 2004) (citing *Murray*, 477 U.S. at

488).

      Here, Petitioner has not shown cause for his default.  Nowhere in his voluminous filings

does he explain why he failed to timely raise this issue.  Significantly, Petitioner has never

alleged that appellate counsel was ineffective.  Thus, Petitioner has not shown cause.

      As a result of Petitioner's failure to show cause for his procedural default, this Court need

not decide whether Petitioner suffered prejudice because, absent proof that the failure to consider

the merits of the claims would result in a fundamental miscarriage of justice, federal habeas relief

is unavailable as to procedurally barred claims unless both cause and prejudice are established.

*Stepney v. Lopes*, 760 F.2d 40, 45 (2d Cir. 1985); *McLeod v. Moscicki*, Civ. No. 02-9335, 2003

WL 22427757, at *8 (S.D.N.Y. Oct. 22, 2003) (citing *Murray*, 477 U.S. at 494); *You v. Bennett*,

Civ. No. 00-7514, 2003 WL 21847008, at *7 (E.D.N.Y. July 29, 2003) (citing *Coleman*, 501

U.S. at 750); *Ayuso v. Artuz*, 2001 WL 246437, at *9 (S.D.N.Y. Mar. 7, 2001); *Pou v. Keane*,

977 F.  Supp. 577, 581 (N.D.N.Y. 1997) (Kahn, J.).

      Petitioner has not shown that failure to consider the merits of the claim would result in a

fundamental miscarriage of justice.  A fundamental miscarriage of justice exists "where a

constitutional violation has probably resulted in the conviction of one who is actually innocent."

*Murray*, 477 U.S. at 496.  "To establish actual innocence, petitioner must demonstrate that, in

light of all the evidence, it is more likely than not that no reasonable juror would have convicted [her]." *Bousley*, 523 U.S. at 623 (internal quotation marks and citations omitted). Furthermore, "[i]t is important to note in this regard that 'actual innocence' means factual innocence, not mere legal sufficiency." *Id.* Petitioner has not made such a showing. To do so, he would have to present "new reliable evidence that was not presented at trial and show that it is more likely than not that no reasonable juror would have found [Petitioner] guilty beyond a reasonable doubt." *Lucidore v. New York State Div. of Parole*, 209 F.3d 107, 114 (2d Cir.2000) (citing *Schlup v. Delo*, 513 U.S. 298, 329 (1995)). Thus, Petitioner's claim is procedurally barred.

Even if Petitioner's Fourth Amendment argument were not procedurally barred, it would not be cognizable on federal *habeas* review because of Petitioner's guilty plea[9]. "After entering a guilty plea, a criminal defendant may not 'thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea.' " *Bastien v. William*, No. 03 Civ. 5749 (DLC), 2004 WL 2978283, at *5 (S.D.N.Y. Dec. 20, 2004) (quoting *Tollett v. Henderson*, 411 U .S. 258, 267 (1973)). Guilty pleas, if voluntary, "preclude a defendant from asserting independent claims relating to prior, nonjurisdictional events." *Conyers v. McLaughlin*, No. 96 CV 1743 NAM GLS, 2000 WL 33767755, at *4 (N.D.N.Y. Jan. 27, 2000). As discussed above, Petitioner's guilty plea was voluntary. He is therefore precluded from asserting his Fourth Amendment claim.

Petitioner would not be entitled to relief even if this Court addressed his Fourth

---

[9]     Respondent did not raise this argument.

Amendment claim on the merits[10].  *See Stone v. Powell*, 428 U.S. 465 (1976); *see also Capellan*

*v. Riley*, 975 F.2d 67, 70 (2d Cir.1992); *Campbell v. Greene*, 440 F. Supp. 2d 125, 138-39

(N.D.N.Y. 2006).  Pursuant to *Stone*, a petitioner is not entitled to *habeas* relief if the state courts

provided "an opportunity for full and fair litigation" of a claim under the Fourth Amendment.

*Stone*, 428 U.S. at 482.  Thus, a federal court may only review a claim based on the Fourth

Amendment "(a) if the state has provided no corrective procedures at all to redress the alleged

Fourth Amendment violations; or (b) if the state has provided a corrective mechanism, but the

defendant was precluded from using that mechanism because of an unconscionable breakdown in

the underlying process." *Capellan v. Riley*, 975 F.2d at 70 (citing *Gates v. Henderson*, 568 F.2d

830, 840 (2d Cir.1977)); *Campbell v. Greene*, 440 F. Supp. 2d at 138 (citing *Capellan* ).

     Petitioner has not met either of the prerequisites for *habeas* review of a Fourth

Amendment claim.  First, New York law provides a corrective procedure for Fourth Amendment

claims in the form of a suppression hearing.  *See* N.Y. Crim. Proc. Law §§ 710.10 et seq. ; *see*

*also Capellan v. Riley*, 975 F.2d at 70 n. 1 (holding that "federal courts have approved New

York's procedure for litigating Fourth Amendment claims ... as being facially adequate");

*Campbell v. Greene*, 440 F. Supp. 2d at 138.  The fact that Petitioner did not file a motion to

suppress does not mean that he was not afforded "an opportunity" to litigate his Fourth

Amendment claim.  *Graham v. Costello*, 299 F.3d 129, 134 (2d Cir. 2002) ("once it is

established that a petitioner has had an opportunity to litigate his or her Fourth Amendment claim

(whether or not he or she took advantage of the state's procedure), the court's denial of the claim

---

[10]    This argument, based on *Stone v. Powell*, was the only argument raised by
Respondent in opposition to Petitioner's Fourth Amendment claim.

is a conclusive determination that the claim will never present a valid basis for federal habeas relief").

Second, Petitioner was not precluded from pursuing his Fourth Amendment claim through any "unconscionable breakdown in the underlying process."  An "'unconscionable breakdown in the state's process must be one that calls into serious question whether a conviction is obtained pursuant to those fundamental notions of due process that are at the heart of a civilized society.'"  *Ferron v. Goord*, 255 F. Supp. 2d 127, 132 (W.D.N.Y. 2003) (quoting *Cappiello v. Hoke*, 698 F. Supp. 1042, 1050 (E.D.N.Y. 1988)).  Examples of conduct that might constitute an "unconscionable breakdown" include the bribing of the trial judge or a guilty plea extracted by torture.  *Allah v. LeFevre*, 623 F. Supp. 987, 991 (S.D.N.Y. 1985).  Lesser conduct, while perhaps lamentable, does not suffice.  For example, "courts within this circuit have refused to equate ineffective assistance of counsel with unconscionable breakdown." *Shaw v. Scully*, 654 F. Supp. 859, 865 (S.D.N.Y.1987) (citing *Jackson v. Scully*, 781 F.2d 291, 297 (2d Cir.1986)); *see also Allah v. LeFevre*, 623 F. Supp. at 991 ("the [Second Circuit] had something other than ineffective assistance of counsel in mind when it speculated that an unconscionable breakdown in state process might permit federal habeas review.").  There was no such "unconscionable breakdown" in this case.

Therefore, because the state courts relied on an independent and adequate state law ground to deny Petitioner's Fourth Amendment claim, because Petitioner's voluntary guilty plea precludes the consideration of alleged pre-plea constitutional violations, and because no "unconscionable breakdown" in the New York state process prevented Petitioner from litigating his Fourth Amendment claim,  Petitioner is not entitled to *habeas* relief on this ground.

E.    Felony complaint

Petitioner argues that the felony complaint was defective and based on unreliable

evidence.  (Dkt. No. 1-2 at 18, 22, 34-35.)  Petitioner initially raised this argument in his second

CPL 440 motion.  The court rejected it because Petitioner had "unjustifiabl[y] fail[ed] to raise

such ground[s] ... upon appeal."  (Ex. M.)  The state court's decision, as discussed above, was

thus based on an independent and adequate state procedural bar.  As discussed above, Petitioner

has not shown cause for his default or that failure to consider the merits of the claim would result

in a fundamental miscarriage of justice.  The claim is thus procedurally defaulted.  Even if it

were not procedurally defaulted, Petitioner's claim regarding defects in the felony complaint "is

meritless because the grand jury indictment superceded any prior accusatory actions, rendering

any alleged pre-indictment deficiencies irrelevant."  *Brown v. Perlman*, No. 03 Civ. 2670, 2006

WL 2819654, at *6 (S.D.N.Y. Sept. 29, 2006).  Finally, even if the claim were not procedurally

defaulted and rendered irrelevant by the indictment, it would be barred by Petitioner's voluntary

and intelligent guilty plea.  *Tollett v. Henderson*, 411 U .S. 258, 267 (1973);  *Bastien v. William*,

No. 03 Civ. 5749 (DLC), 2004 WL 2978283, at *5 (S.D.N.Y.  Dec. 20, 2004); *Conyers v.*

*McLaughlin*, No. 96 CV 1743 NAM GLS, 2000 WL 33767755, at *4 (N.D.N.Y.  Jan. 27, 2000).

Therefore, Petitioner is not entitled to *habeas* relief on this ground.

        F.    Preliminary Hearing

Petitioner argues that his preliminary hearing was cancelled without good cause, violating

his right to due process.  (Dkt. No. 1-2 at 2.)  Petitioner did not raise this argument in his direct

appeal or in either of his CPL 440 motions.

In order to be eligible for *habeas* relief, a petitioner's federal constitutional claim must

24

have been "fairly presented" to the state courts. *Picard v. Connor*, 404 U.S. 270, 275 (1971).

This is to ensure that the state is given the "opportunity to pass upon and correct alleged

violations of its prisoners' federal rights." *Id.* In order to give state courts this opportunity, a

> litigant wishing to raise a federal issue can easily indicate the federal
> law basis for his claims in a state-court petition or brief, for example,
> by citing in conjunction with the claim the federal source of law on
> which he relies, or a case deciding such a claim on federal grounds,
> or by simply labeling the claim 'federal.'

*Baldwin v. Reese*, 541 U.S. 27, 32 (2004). *Habeas corpus* petitioners bear the burden of

demonstrating that they have exhausted available state remedies. *Cruz v. Artuz*, Civ. No. 97-

2508, 2002 WL 1359386, at *8 (E.D.N.Y. June 24, 2002) (citing *Colon v. Johnson*, 19 F. Supp.

2d 112, 119-20 (S.D.N.Y. 1998); *United States ex rel. Cuomo v. Fay*, 257 F.2d 438, 442 (2d Cir.

1958)); *see also Ruine v. Walsh*, Civ. No. 00-3798, 2002 WL 1349713, at *2 (S.D.N.Y. June 19,

2002) (citing *Colon*, 19 F. Supp. 2d at 119-20). Petitioner here has not met that burden.

When a claim has not been fairly presented to the state courts, a federal court may find

that there is an absence of available state remedies "if it is clear that the unexhausted claim is

procedurally barred by state law and, as such, its presentation in the state forum would be futile."

*Aparicio v. Artuz*, 269 F.3d 78, 90 (2d Cir. 2001) (citing *Reyes v. Keane*, 118 F.2d 136, 139 (2d

Cir. 1997)); *Lurie v. Wittner*, 228 F.3d 113, 124 (2d Cir. 2000), *cert. denied*, 532 U.S. 943

(2001). "In such a case, the *habeas* court theoretically has the power to deem the claim

exhausted." *Aparicio*, 269 F.3d at 90. Here, as discussed above, "New York does not ... permit

collateral attacks on a conviction when the defendant unjustifiably failed to raise the issue on

direct appeal" (*Aparicio*, 269 F.3d at 91) or in a previous § 440.10 motion (*Murden v. Artuz*, 497

F.3d 178, 191-94 (2d Cir. 2007)). Thus, Petitioner could not file a third CPL 440 motion raising

this claim.  Therefore, Petitioner's claim is "deemed exhausted" for purposes of Petitioner's *habeas* application.  *Spence v. Superintendent*, 219 F.3d 162, 170 (2d Cir. 2000); *Senor v. Greiner*, Civ. No. 00-5673, 2002 WL 31102612, at *10 (E.D.N.Y. Sept. 18, 2002).  However, although the due process claim  is "deemed exhausted," it is also procedurally barred.  *See Aparicio*, 269 F.3d at 90 (citing *Coleman*, 501 U.S. at 735 n.1).

As discussed above, federal courts may only consider the substance of procedurally barred claims where the petitioner can establish both cause for the procedural bar and prejudice, or alternatively, that a fundamental miscarriage of justice would occur absent federal court review.  *See St. Helen v. Senkowski*, 374 F.3d 181, 184 (2d Cir. 2004) As discussed above, Petitioner has not established cause or shown that a fundamental miscarriage of justice would occur absent federal court review.

Moreover, even if the claim were not procedurally barred, it would be superceded by the indictment (*Brown v. Perlman*, No. 03 Civ. 2670, 2006 WL 2819654, at *6 (S.D.N.Y. Sept. 29, 2006)) and barred by Petitioner's voluntary and intelligent guilty plea.  *Tollett v. Henderson*, 411 U .S. 258, 267 (1973);  *Bastien v. William*, No. 03 Civ. 5749 (DLC), 2004 WL 2978283, at *5 (S.D.N.Y.  Dec. 20, 2004); *Conyers v. McLaughlin*, No. 96 CV 1743 NAM GLS, 2000 WL 33767755, at *4 (N.D.N.Y.  Jan. 27, 2000). Therefore, Petitioner is not entitled to *habeas* relief on this ground.

G.      Probable Cause and Bail Inquiry

Petitioner argues that the trial court did not conduct a proper probable cause hearing or bail inquiry.  (Dkt. No. 1-2 at 19-20.)  Petitioner did not raise this argument on direct appeal or in either of his CPL 440 motions.  It is thus unexhausted and procedurally barred.  In addition, even

if it were not procedurally barred, it would be superceded by the indictment (*Brown v. Perlman*,

No. 03 Civ. 2670, 2006 WL 2819654, at *6 (S.D.N.Y. Sept. 29, 2006)) and barred by Petitioner's

voluntary and intelligent guilty plea. *Tollett v. Henderson*, 411 U .S. 258, 267 (1973); *Bastien v.*

*William*, No. 03 Civ. 5749 (DLC), 2004 WL 2978283, at *5 (S.D.N.Y. Dec. 20, 2004); *Conyers*

*v. McLaughlin*, No. 96 CV 1743 NAM GLS, 2000 WL 33767755, at *4 (N.D.N.Y. Jan. 27,

2000). Therefore, Petitioner is not entitled to *habeas* relief on this ground.

  H. <u>Evidence Presented to Grand Jury</u>

  Petitioner argues that the evidence presented to the grand jury was false and/or

inflammatory. (Dkt. No. 1-2 at 14, 17, 24-28, 32-33, 35.) Petitioner raised this argument for the

first time in his second CPL 440 motion. The court rejected it because Petitioner had

"unjustifiabl[y] fail[ed] to raise such ground[s] ... upon appeal." (Ex. M.) The state court's

decision, as discussed above, was thus based on an independent and adequate state procedural

bar. As discussed above, Petitioner has not shown cause for his default or that failure to consider

the merits of the claim would result in a fundamental miscarriage of justice. The claim is thus

procedurally defaulted. Even if the claim were not procedurally defaulted, it would be barred by

Petitioner's voluntary and intelligent guilty plea. Therefore, Petitioner is not entitled to *habeas*

relief on this ground.

  I. <u>Ineffective assistance of counsel</u>

  Petitioner argues that trial counsel was ineffective because (1) he did not inform

Petitioner of the February 1, 2001, amendment to Penal Law § 130.50 (Dkt. No. 1-2 at 36-37, 43-

44, 47-48, 49-50); (2) he failed to obtain a Bill of Particulars specifying the date of the offense

(Dkt. No. 1-2 at 41-42); and (3) he failed to obtain a response to the Demand for Discovery (Dkt.

No. 1-2 at 47-48.)  The state court found, in response to Petitioner's first CPL 440 motion, that trial counsel "provided [Petitioner] at all stages of the proceedings with wise and competent counsel" that was "more than meaningful."  (Ex. C.)  This was a reasonable application of clearly established federal law.

The Sixth Amendment to the United States Constitution provides that: "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. To establish a violation of this right to the effective assistance of counsel, a habeas petitioner must show both: (1) that counsel's representation fell below an objective standard of reasonableness, measured in the light of prevailing professional norms; and (2) resulting prejudice, that is, a reasonable probability that, but for counsel's unprofessional performance, the outcome of the proceeding would have been different. *Strickland v. Washington*, 446 U.S. 674, 688-90 (1984); *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) ("the legal principles that govern claims of ineffective assistance of counsel" were established in *Strickland.)*.[11]  There is a strong presumption that counsel's conduct fell within the wide range of reasonable assistance and that counsel's actions constituted sound trial strategy under the circumstances.  *Cuevas v. Henderson*, 801 F.2d 586, 589-90 (2d Cir. 1986).

Here, the record shows that trial counsel's performance was objectively reasonable.  Trial counsel obtained a favorable plea bargain for Petitioner, who faced a possible sentence of over 100 years if convicted on all of the charges against him.  Petitioner's voluminous filings fixate on

---

[11]      In *Williams v. Taylor*, the Supreme Court declared that "the rule set forth in Strickland qualifies as "clearly established Federal law [.]" *Williams*, 529 U.S. 362, 391 (2000).

his belief that if he had known of the amendment to Penal Law section 130.50, he could have pleaded guilty to one count of second degree sodomy[12] (rather than first degree) and served a maximum of seven years in prison.  There is no evidence that such a deal would have been offered.  It is more likely that, had Petitioner objected to pleading guilty to Count 27 due to the perceived ambiguity, the prosecutor would have offered a deal involving Count 32, which involved a 10-year old victim and thus constituted sodomy in the first degree both before and after February 1, 2001.  Therefore, Petitioner is not entitled to *habeas* relief on this ground.

J.    Shifting of Burden of Proof

Petitioner argues that the state appellate court illegally shifted the burden of proof to Petitioner to prove the date on which the crime occurred.  (Dkt. No. 1-2 at 39, 46-47.)  It appears that the only time that Petitioner raised this argument in the state courts was in his application for leave to appeal the Fourth Department's decision on his direct appeal to the New York Court of Appeals.  (Ex. G. )  A claim is not "fairly presented" where it is raised for "the first and only time" in an application for discretionary review in the Court of Appeals.  *See Castille v. Peoples*, 489 U.S. 346, 351 (1989).  The claim is thus unexhausted.  This Court may, however, deem the claim exhausted because New York does not permit collateral attacks on a conviction when the defendant unjustifiably failed to raise the issue in a previous CPL 440 motion.  *Murden v. Artuz*, 497 F.3d 178, 191-94 (2d Cir. 2007).  As with Petitioner's other unexhausted and procedurally barred claims, he has not shown cause for his default or that failure to consider the merits of the claim would result in a fundamental miscarriage of justice.  Therefore, Petitioner is not entitled

---

[12]    N.Y. Penal Law § 130.45 (McKinney 2000).  ("A person is guilty of sodomy in the second degree when, being eighteen years old or more, he engages in deviate sexual intercourse with another person less than fourteen years old.")

to *habeas* relief on this ground.

   **WHEREFORE**, based upon the foregoing, it is hereby

   **ORDERED**, that the petition for a writ of habeas corpus (Dkt. No. 1) is **DENIED** and

**DISMISSED**.  Furthermore, Petitioner has not made a "substantial showing of the denial of a

constitutional right" pursuant to 28 U.S.C. § 2253(c)(2) ("A certificate of appealability may issue

... only if the applicant has made a substantial showing of the denial of a constitutional right.");

*see also Lucidore v. New York State Div. of Parole*, 209 F.3d 107, 112 (2d Cir. 2000).

Therefore, no certificate of appealability will issue with respect to any of Petitioner's claims.


Dated: September 4, 2008
   Syracuse, New York

              George H. Lowe
              United States Magistrate Judge